IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ASOCIACION DE NAVIEROS DE PUERTO RICO, INC.<br>Plaintiff<br>vs<br>JULIO ALICEA VASALLO, Executive Director of the Automobile Accident Compensation Administration of Puerto Rico (AACA); ADMINISTRACION DE COMPENSACION POR ACCIDENTES DE AUTOMOVILES; MANUEL SARMIENTO; HECTOR RAMOS; VICTORIANO QUINTANA; JOSE CARRION; and LUIS RIVERA MARIN, members of the Board of Directors of AACA<br>Defendants | CIVIL 10-2152CCC |

**OPINION AND ORDER**

This is an action for money damages, injunctive, and declaratory relief involving the fees imposed by the Commonwealth of Puerto Rico's Administración de Compensaciones por Accidentes de Automóviles ("ACAA") against Asociación de Navieros de Puerto Rico, Inc. (Puerto Rico Shipping Association or "PRSA"), a nonprofit organization composed of thirty companies that are instrumentalities of commerce engaged in the interstate and/or international transportation of goods by sea or that own and/or lease land and transportation equipment essential to interstate commerce. The members plaintiff represents in this action are Luis Ayala Colón Sucres., Inc. ("AYACOL"), International Shipping Agency, Inc. ("Intership"), Horizon Lines of Puerto Rico, Inc. ("Horizon Lines"), Crowley Puerto Rico Services, Inc.

("Crowley"), Trailer Bridge, Inc. ("Trailer Bridge"), and Sea Star Lines LLC ("Sea Star"). On January 17, 2011, PRSA filed a Second Amended Complaint against defendants ACAA, its Executive Director Julio Alicea-Vasallo, and board members Manuel Sarmiento, Héctor Ramos, Victoriano Quintana, José Carrión, and Luis Rivera Marín (together the "defendants"). Plaintiff challenges the constitutionality of the policy enacted pursuant to Sections 2064(2), (3), and (4) of the Automobile Accident Social Protection Act ("the Act"), 9 L.P.R.A. § 2051 et seq. and ACAA's Manual to determine the premiums imposed on chassis registered in the mainland U.S. brought transitorily to Puerto Rico. It asserts claims of preemption, discrimination in violation of interstate commerce, and unjust enrichment. It seeks a declaration that such practice discriminates against PRSA members that engage in interstate commerce and restitution of sums collected from PRSA members.

The Commonwealth of Puerto Rico filed a Motion to Intervene on May 31, 2012 (d.e. 72), asserting that AASPA was not preempted by federal law. On June 13, 2012, the parties filed a Joint Notice Settlement Agreement (d.e. 77) informing the Court they had entered into a Confidential Settlement Agreement and Release (d.e. 77-1) (the "Settlement Agreement") whereby they fully settled (*see Id*. at p. 2, 2nd Whereas of agreement) in the sum of six hundred thousand dollars ($600,000.00) all monetary claims or potential monetary claims related to this action. *See* d.e. 77-1, ¶ 4 and p. 2. Accordingly, partial judgment was entered on May 17, 2013 (d.e. 89) dismissing, with prejudice, all monetary claims.

Before the Court are the Joint Stipulation of Facts (d.e. 82) and the parties' Memoranda of Law (d.e. 84 and d.e. 86) on the constitutional issues, all filed on October 5, 2012. In addition to arguing that the AASPA discriminates in violation of the Commerce Clause, plaintiff claims ACAA does not determine premiums in accordance with the Act and that the law (AASPA) is preempted by the Motor Carrier Act and the Safe, Accountable, Flexible, Efficient Transportation Equity Act ("SAFETEA-LU"). Defendants do not address the discrimination claim, focusing instead, as did the Commonwealth of Puerto Rico, that the Act is not preempted by federal law.

Considering the fact of the settlement reached by the parties, the Court now addresses those allegations of the Second Amended Complaint that are essential to determine whether the resolution of the constitutional issues has been rendered unnecessary. The introduction of the Second Amended Complaint provides the framework of its entire constitutional stance:

> The Automobile Accident Social Protection Act (the "Act") 9 P.R. Laws Ann. § 2051 *et seq*. . . . (1) discriminates against members of the PRSA who own and or lease chassis used for transportation of goods in interstate commerce; (2) places an undue burden upon interstate commerce; and (3) is preempted by federal laws and regulations.

The body of the complaint contains the following allegations that are relevant to determine whether there are still pending before the Court constitutional questions that must be resolved:

> **15**.   Chassis are an essential component of interstate commerce in Puerto Rico . . . [V]irtually 100% of the containerized cargo that enters the Island via interstate and international maritime commerce is attached to a chassis which in turn is hauled by a truck and delivered.

18. Trailer Bridge, Sea Star, Horizon Lines, and Crowley are ocean carriers engaged in interstate carriage of goods by sea. These PRSA Members have shipping routes between Puerto Rico and the States of Florida, Texas, New Jersey, Pennsylvania, and Louisiana.

19. Trailer Bridge, Sea Star and Crowley's type of shipping operation is commonly known as "Roll-on/Roll-Off" or "Ro/Ro". Ro/Ro ships are vessels designed to carry wheeled cargo such as chassis that are driven on and off the ship on their own wheels. Ro/Ro vessels are designed to carry rolling stock cargo which does not require cranes to be loaded or unloaded but is driven or hauled on and off the ship's decks. Ro/Ro vessels have built-in ramps that allow the cargo to be efficiently "rolled on" and "rolled off" the vessel when in port.

20. In a Ro/Ro operation, containers or tanks are first attached to the chassis, which is then hauled by a truck onto the Ro/Ro ship or barge's deck at the port of origin in the mainland United States or foreign nations. When the Ro/Ro ship arrives at the destination port in Puerto Rico, the chassis are attached to local trucks that will deliver the cargo container to an ultimate consignee. After the ultimate consignee unloads the cargo from the container or tank, the chassis is re-attached to a truck and taken back to the port, hauled on board the Ro/Ro vessel and taken back to the mainland United States or foreign nations.

22. Horizon Lines' type of shipping operation is commonly known as "Lift-on/Lift-off" or "Lo/Lo". Lo/Lo is a cargo handling technique involving transfer of containers to and from the ship using shore side cranes or ship's gear. This in contrast to Ro/Ro vessels, which use ramps to load and unload containers.

24. The remaining PRSA Members, AYACOL and Intership, are stevedores and marine terminal operators based in Puerto Rico. Intership and AYACOL are not engaged in [the] carriage of goods by sea but own and/or lease chassis used for inland transportation of containers arriving to Puerto Rico on board Lo/Lo vessels engaged in interstate and international carriage of goods by sea.

31. In the case of truck-chassis units, the means of much commerce on U.S. highways, Puerto Rico treats the truck (which contains the operator cab and the engine) and the

> chassis (which carries the containerized cargo, not passengers) as separate vehicles, each of which must pay an annual AACA premium.

**32.** Regarding the process of fixing and collecting annual premiums, the Act divides chassis in two categories: (1) those registered in Puerto Rico's Department of transportation pursuant to the "Vehicle and Traffic Law of Puerto Rico" whose registration has to be renewed annually; and (2) those engaged in interstate and international maritime commerce via Ro/Ro operations which are not registered in the Puerto Rico Department of Transportation, but in other states of the United States, and enter Puerto Rico transitorily.

**33.** The chassis in the first category are those locally owned, that remain in Puerto Rico, and are used in Lo/Lo operations. The chassis in the second category enter Puerto Rico transitorily and are hauled back onto Ro/Ro vessels and taken to other ports in the mainland United States or other nations.

**35.** The PRSA members whose chassis are registered in Puerto Rico (Intership and AYACOL) pay AACA's annual premium pursuant to § 2064(3) because their chassis are registered in the Department of Transportation of Puerto Rico and must bear license plates issued by said Department.

**36.** The Act provides that annual premiums for chassis registered at the Puerto Rico Department of Transportation must be fixed: (1) with the approval of the Commissioner of Insurance; (2) based on experience and; (3) based on actuarial studies. Id. § 2063(4).

**37.** The Act provides a different method to fix and collect the premiums for chassis engaged in interstate and international maritime commerce entering the ports of Puerto Rico aboard Ro/Ro vessels.

**38.** Chassis 'engaged in maritime transportation to bring freight to Puerto Rico from abroad, and which enter Puerto Rico as transients, may choose to pay a special premium instead of the above stated annual premium, based on their short stay on the Island, regardless of whether or not they are registered, or regardless of the type of registry. This special premium shall be fixed by the Board of Directors of the

        Administration as previously provided and based on how many times these trailers enter Puerto Rico. The payment mechanism for these special premiums shall be created through a procedure that shall be established by the Administration for that purpose.' Id. § 2064(2).

**50.** On October 13, 1994, without conducting an actuarial study, AACA's Board of Directors approved a Resolution (hereinafter "the Resolution") creating a formula to fix premiums that would cover all transient chassis introduced to Puerto Rico transitorily in Ro/Ro operations.

**51.** According to the Resolution, the transient chassis' 'premium will be calculated based on $35.00 multiplied by the number of chassis on the day of the year with the highest number of chassis in transit on Puerto Rico's roads or have the potential of transit because they are present in Puerto Rico.'

**52.** Defendants also approved a 'Procedure for Collection of Chassis Premiums' which applies exclusively to 'chassis that enter Puerto Rico in a transitory manner.'

**54.** The Procedure for Collection of Chassis Premiums manual further provides that 'the ocean carrier will design its own internal procedures and controls to comply with this [premium payment] procedure and with the provisions of the law they are based on. All information related to the payment of AACA premiums, will be available to the latter.'

**55.** Lastly, the Procedure for Collection of Chassis Premiums manual provides that 'the ocean carrier will pay a premium to cover the maximum exposure of the risk posed by chassis entering Puerto Rico in a transitory manner during one year.'

**56.** The Act on its face and plain language discriminates against transient chassis that enter Puerto Rico in Ro/Ro operations, and favors those locally based, locally owned and locally registered chassis used to transport containers brought to the Island on board Lo/Lo vessels.

**57.** AACA premiums on transient chassis fall with disproportionate economic weight on owners of chassis entering Puerto Rico from the mainland United States in Ro/Ro operations.

**58.** Section 2063(4) of the Act provides that the annual premiums for locally based, owned and registered chassis shall be fixed: (1) <u>with the approval of the Commissioner of Insurance</u>; (2) <u>based on experience</u> and; (3) <u>based on the corresponding actuarial studies</u>.

**60.** Therefore the AACA premiums for those locally registered chassis have to undergo a scrutiny and analytical process at the Commissioner of Insurance's office. The premiums for locally registered chassis must be supported, justified and warranted by an actuarial study showing risk assessments that support the actual premium. The Act also provides that the premiums for locally registered chassis must be based on 'experience'.

**63.** The procedure adopted by AACA's Board of Director in the Resolution, as permitted by the Act, to fix premiums for transient chassis, in contrast to the procedure for locally registered chassis, does not require that the premiums proposed by AACA's Board of Directors undergo the scrutiny of the Commissioner of Insurance and be supported by actuarial studies and experience.

**64.** This results in a significant advantage for the locally registered chassis as their premiums have to be highly scrutinized and supported by risk assessments made through actuarial studies, while the premiums for transient chassis can be fixed arbitrarily by the Board of Directors without an assessment of the risk transient chassis pose to the public using Puerto Rican highways and roads (by way of an actuarial study) and without taking into consideration the "experience" in their commercial activity.

**69.** Second, the method to determine the amount of the premiums as established in AACA's Resolution of October 13, 1994, bears no relation to the harm caused by transient chassis while operated in Puerto Rico's roads and highways. ($35 * (number of chassis on the day of the year with the highest number of chassis in transit))

**71.** Lastly, the Resolution provides that chassis that are not being operated in Puerto Rico's roads and highways must also pay a premium, even when they do not present any risk of harm to the public because they are not in transit. The Resolution states that transient chassis that 'have the

  potential of transit because they are present in Puerto Rico' have to pay AACA premiums.

**105.** AACA has not submitted to the U.S. Secretary of Transportation the Act nor the Resolution entered by its Board of Directors establishing the method to fix and collect premiums for chassis nor has it submitted the Automobile Accident Social Protection Act provisions pertaining to chassis as it is required by the Motor Carrier Act.

**114.** The method approved by AACA's Board of Directors in the Resolution of October 13, 1994 ($35 * (number of chassis on the day of the year with the highest number of chassis on transit)) is ultra vires as it is outside the scope of the basis to establish premiums mandated by the Act.

**115.** Section 2064(2) of the Act clearly provides that 'this special premium shall be fixed by the Board of Directors of the Administration as previously provided and based on how many times these trailers enter Puerto Rico.' (Emphasis theirs)

**117.** Consequently, the Resolution approved by AACA's Board of Directors establishing a formula to fix premiums for transient chassis is null and void as the Board of Directors acted outside the scope of regulatory power provided by the Act.

**132.** The imposition of the premiums established under the Act deprive Plaintiff's members of the right to engage in interstate commerce free of unreasonable burdens, as protected by the Commerce Clause, including unreasonably burdening the ability of Plaintiff's members who engage in the movement of cargo containers and/or tanks in interstate commerce in Puerto Rico from engaging in the interstate movement of cargo containers and/or tanks.

**135.** Defendants' imposition of the premiums established under the Act are unlawful, and are void and unenforceable pursuant to 42 U.S.C. § 1983 and the Commerce Clause of the Constitution as unreasonable burdens on interstate commerce.

**142.** Because section 2063(4) of the Act requires that the annual premiums be approved by the Commissioner of Insurance, based on actual experience and the corresponding actuarial study, and the in-fact established premiums are solely based

> [on] an arbitrary procedure established by the Defendants and not the afore stated legislated criteria, the premiums currently established must be declared illegal, null and void 'in-fact'."

These allegations demonstrate that the claims of (1) illegality of the ACAA premiums and, (2) of unconstitutionality as for placing an undue burden and violating interstate commerce all rest on "the new formula to fix premiums for chassis entering Puerto Rico transitorily in Ro/Ro operations" (d.e. 9, ¶ 49), approved by way of an ACAA Board of Directors Resolution on October 13, 1994 and its related 'Procedure for Collection of Chassis Premiums' Manual.

The relevant portions of the Settlement Agreement and Release (d.e. 77-1), paragraphs 3, 4, 7, and 8, read as follows:

> **3.** In consideration of the payment of the Settlement Amounts to be specified in Clauses 4 and 5 below, Plaintiff and the other appearing members of the PRSA, and their past, present and future agents, servants, representatives, employees, predecessors and successors in interest, assigns, and attorneys, will, upon Defendants' payment in full of the Settlement Amounts to be specified in Clauses 4 and 5 below of this Agreement, release, exonerate, and forever discharge Defendants, and all of its past, present and future agents, servants representatives, employees, subsidiaries, affiliates, and related companies, predecessors, and successors in interest, assigns, owners, shareholders, officers, insurers, attorneys, fiduciaries, benefit plains, and plan administrators, of and from any and all monetary claims and/or economic damages, including any past, present or future monetary claims, monetary liability, monetary demands, monetary obligations, monetary actions, monetary causes of action, monetary rights, economic damages, economic losses, costs, expenses, and monetary compensation of any nature whatsoever, whether for compensatory or punitive damages, at law or in equity, whether based on tort, contract, law or regulation of the United States, Puerto Rico or any other jurisdiction, or under any other theory of recovery, whether known or unknown to Plaintiff, from the beginning of time to the date hereof, which

        are on account of, or which may, in any way, arise out of, or be in any manner related to the allegations and the claims which were or could have been made by Plaintiffs in the Action against Defendants." *Id.* at pp. 2-3.

    **4.**    In consideration of the aforementioned releases and waivers, Defendants will pay the Plaintiff the total amount of SIX HUNDRED THOUSAND DOLLARS ($600,000.00 hereinafter the "Settlement Amount")." *Id.* at p. 3.

    **7.**    In consideration of the promises made in Clause 3 of this Agreement, Defendants and its officers, shareholders, agents, attorneys, insurers and all affiliated companies, managers, employees, servants, forever RELEASE, ABSOLVE, and DISCHARGE Plaintiffs and their heirs, beneficiaries, agents, officers, and insurers from all actions, causes of action, claims, controversies, and disputes, past, present or future, foreseen or unforeseen, from the beginning of time, arising from the events that gave rise and are related to Civil Action No. 10-2152 (CCC)." *Id.* at p. 4.

    **8.**    The Board of Directors AACA shall issue a '*Resolution & Unanimous Consent by Board of Directors*' in the English language: (1) Accepting and agreeing to the terms and conditions of this Agreement; and (2) *Leaving without effect the Resolution of 1994 and 2008 establishing ACAA premiums for transient chassis and the relevant Procedure Manual for Collection of Chassis Premiums*." (emphasis ours) d.e. 77-1, p. 4*.*

    The Court has reexamined the Settlement Agreement (d.e. 77-1) filed by the parties on June 13, 2012, and the essential allegations of the Second Amended Complaint. Having carefully considered the scope of such agreement, specifically the breadth of the mutual exoneration clauses at paragraphs 3 and 7 which flow from the payment of the settlement amount of six hundred thousand dollars ($600,000.00) specified in paragraph 4, the Court concludes that there is no longer a live controversy between the parties in this case.

The mutual exonerations and discharges made by plaintiff and defendants at paragraphs 3 and 7, respectively, as well as the action to be taken by the Board of Directors of ACAA pursuant to paragraph 8 of the Settlement Agreement and Release "leaving without effect the Resolution of 1994 and 2008 . . . chassis payment" simply do away with the need to consider the constitutional challenges raised in the Second Amended Complaint.  These constitutional claims were stated as follows:  that the AASPA ("the Act") favored local chassis and discriminated against transient chassis that entered Puerto Rico in interstate commerce; that the ACAA premiums placed an undue burden on interstate commerce; that the Motor Carrier Act of 1980 (49 U.S.C. § 13101 *et seq.*) partly preempts the Act and that the Act is also expressly preempted by the SAFETEA-LU. Additionally, the Settlement Agreement moots the claim that the method approved by ACAA's Board of Directors in the October 13, 1994 Resolution was *ultra vires* since paragraph 8 at page 4 of the agreement provides that the Board of Directors will issue a "Resolution & Unanimous Consent . . . leaving without effect the Resolution of 1994 . . ."

Under the canon of constitutional avoidance, "federal courts are not to reach constitutional issues where alternative grounds for resolution are available."  *Vaqueria Tres Monjitas, Inc. v. Pagan*, 748 F.3d 21, 26 (1st Cir. 2014) (referring to *Am. Civil Liberties Union v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013).  "[I]f subsequent events, such as a settlement between the parties, render the resolution of the

constitutional question unnecessary, courts will generally consider the issue moot and decline to rule on it." *Benitez on Behalf of Catala v. Collazo*, 584 F. Supp. 267, 271 (D.P.R. 1984) (referring to *Local No. 8–6, Oil, Chemical & Atomic Workers International Union v. Missouri*, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed. 2d 373 (1960); *Dakota County v. Glidden*, 113 U.S. 222, 225, 5 S.Ct. 428, 429, 28 L.Ed. 981 (settlement of money judgment appealed extinguished the case)). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Conference of Catholic Bishops*, 705 F.3d at 52 (quoting *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999)).

The relevant portion of paragraph 8 of the Settlement Agreement, that is, the issuance by the ACAA Board of Directors of a Resolution "(2) [l]eaving without effect the Resolution of 1994 and 2008 establishing ACAA premiums for transient chassis and the relevant Procedure Manual for Collection of Chassis Premiums," **combined** with the all-encompassing mutual exonerations upon payment in full of the settlement amount, by virtue of which "each party releases, exonerates, and forever discharge each other from all causes of actions, claims past, present or future, from the event that gave rise and are related to this civil action No. 10-2152 (CCC)," and particularly, as to plaintiff Asociacion de Navieros de Puerto Rico, Inc.'s release, exoneration, and discharge of defendants, upon full payment of the settlement amount, which covers not only exoneration of any and all monetary claims but also any

CIVIL 10-2152CCC 13

"monetary compensation of any nature whatsoever, whether for compensatory or punitive damages, at law or in equity, whether based on tort, contract, law or regulation of the United States, Puerto Rico or any other jurisdiction, *or under any other theory of recovery, whether known or unknown to plaintiff, from the beginning of time to the date hereof, which are on account of, or which may, arise out of, or be in any manner related to the allegations and the claims which were or could have been made by plaintiffs in the action against defendants*" (emphasis ours), leads the Court to conclude that there is no live claim or controversy, whether based on constitutional grounds or any other theory of recovery, to be adjudicated on the merits.

The Court concludes that the resolution of the constitutional questions initially raised are unnecessary and therefore declines to rule on them. For the reasons stated, this entire action has been rendered moot.

SO ORDERED.

At San Juan, Puerto Rico, on July 3, 2018.

S/CARMEN CONSUELO CEREZO
United States District Judge